## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Kenneth L. Rodgers,**

> **Plaintiff,**

**-V-**

**Q3 Stamped Metal, Inc.,** *et al.*,

> **Defendants.**

**Case No. 2:04-CV-0269**
**JUDGE SMITH**
**Magistrate Judge Abel**

## OPINION AND ORDER

Plaintiff Kenneth Rodgers brings this action against Defendants Q3 Stamped Metal, Inc., Q3 Industries, Inc., Q3 Stamped Metal, Inc. QS 9000/ISO 9002, Q3 Companies, Q3 Team, and Francis L. Price (collectively "Defendants") alleging causes of action under **the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132,** and under state law arising out of Defendants' alleged breach of Plaintiff's employment agreement. Plaintiff asserts that he was denied severance pay benefits, health insurance benefits, compensation under a Profit Bonus Pool and Executive Incentive Plan and Defendants' failure to satisfy certain alleged reimbursement obligations. On December 1, 2006, Plaintiff moved for summary judgment (Doc. 38), seeking a judgment for $124,798.96 against all Defendants on his ERISA claims and $131,321.21 on the state law claims. For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    FACTS

On or about April 7, 2000, Plaintiff met with Defendant Francis L. Price to discuss a possible position as general manager of Defendant Q3 Metal Stamping, Inc. ("Q3").  On April 25, 2000, Defendant Francis L. Price, Chief Executive Officer of Q3, sent Plaintiff a letter constituting an offer of employment and confirming the major terms of employment. Subsequently, on May 1, 2000, Plaintiff made certain modifications to the terms of employment and accepted employment as Q3's General Manager.  (*See* copy of the Employment Letter attached as Exhibit A to Def's Memo. in Opp.).  Among other things, the Employment Letter contained the following provisions:

**Position**
You will hold the title of General Manager of Q3 Stamped Metal, Inc.

**Participation in Profit Bonus Pool**
We have designed a comprehensive Profit Bonus Pool system intended initially to cover the company executives and certain managers. This plan is driven by profitability. Your Bonus will not be less than 20% of your annual salary.

**Company Car and Cellular Phone**
You will be provided a company automobile, for which expenses related to insurance, gas and maintenance will be paid by the company. You will also be provided a company cellular telephone. You will be required to track and report personal usage for IRS purposes.

**Severance Package**
In the event you are terminated by Q3 Stamped Metal, Inc., you will be entitled to six months base salary and six months medical benefits. The severance provided will not be payable if you are terminated for cause.  Cause, shall only include acts of gross negligence, fraud, dishonesty or acts that are materially detrimental to Q3's business operations or reputation.

**Relocation Expenses**
Q3 will pay for all reasonable moving expenses, which would include household moving expenses (packing, pick-up and delivery of household items). You will also be allowed up to $2,000.00 for miscellaneous reimbursable expenses.

(*See* Employment Letter).

In January 2001, Defendant Price, dissatisfied with Plaintiff's performance as Q3's General Manager, removed Plaintiff from that position and appointed him to the newly created position of Corporate Materials Manager for Q3 and Q3 Industries, Inc. Subsequently, on or about September 2001, discussions were commenced with Plaintiff regarding a downward adjustment in his compensation consistent with his new position.

Plaintiff's performance as Corporate Materials Manager also proved unsatisfactory. In mid-March 2002, Plaintiff was informed that his compensation would be cut and that his Company car would have to be surrendered on or before the expiration of the vehicle lease on March 25, 2002. Additionally, in response to Plaintiff's query, Plaintiff was advised that the severance package specified in the Employment Letter pertained to his initial job classification as General Manager of Q3 and not to his current position as Corporate Materials Manager.

Plaintiff's employment was terminated April 9, 2002. Notwithstanding the fact that Q3 believed that his performance had been detrimental to its business, Q3 treated the termination as a permanent layoff due to its current business condition and need for organizational changes, so that the termination would not adversely affect Plaintiff's ability to obtain other employment.

Upon his termination as Corporate Materials Manager, Plaintiff received four weeks severance pay, two weeks unused vacation, one week withheld pay, and continued health coverage through April 30, 2002. (*See* Bell Affidavit at ¶ 11).

Under the terms of the Employment Letter, Plaintiff was entitled to participate in a Profit Bonus Pool program for Q3 executives and certain managers, which program was driven by the profitability of Q3. A document summarizing the basic framework of the Profit Bonus Pool

program was prepared.  This document specified that it was only a summary, did not represent

the actual plan document, and that the plan documents – to be drafted by legal counsel in the

near future – would govern all aspects of the plan.  Calculations attached to this document reflect

that Q3 had projected a profit for 1999.

Q3 did not generate a profit in 1999.  Instead, the Company generated significant losses

in 1999, 2000, and 2001.  Q3's losses placed it in a default position with Foothill Capital, its

senior secured lender, compelling Q3 to enter into a forbearance agreement which, by its terms,

prohibited the payment of bonuses to executives and key managers while the Company was not

earning profits.  In conformity with the terms of the forbearance agreement, no bonuses were

paid to executives and/or Q3's managers during 2000 and 2001.  Further, in light of Q3's

financial condition, it did not institute the Profit Bonus Pool program.  No formal plan

documents were drafted by Q3's legal counsel and no corporate action was taken to establish and

implement the Profit Bonus Pool Program. (*See* Bell Affidavit at ¶¶ 7-10; Price Affidavit at ¶¶ 9-

12).

Q3 reimbursed Mr. Rodgers for (a) the gas, maintenance and insurance

expenses incurred in connection with the Company car provided to Mr. Rodgers from the

beginning of his employment through the termination of the vehicle lease at the end of March

2002, and (b) reimbursable expenses incurred in connection with his move from Michigan to

Columbus, Ohio.  The Company is unaware of any unpaid, outstanding reimbursement amounts

due Mr. Rodgers under the terms of the Employment Letter.  (Bell Affidavit at ¶ 12).

-4-

This action was commenced on April 7, 2004, when Plaintiff Kenneth L. Rodgers filed a Complaint against Defendants alleging causes of action under ERISA and state law.[1]  Plaintiff alleges that Defendants' breach of and failure to abide by the terms of an employment agreement resulted in the denial of severance pay benefits, health insurance benefits, compensation under a Profit Bonus Pool and Executive Incentive Plan and Defendants' failure to satisfy certain alleged reimbursement obligations.  Additionally, the Complaint alleges that Defendant Francis L. Price is individually liable under ERISA for breach of fiduciary duty.

On December 1, 2006, Plaintiff filed a Motion for Summary Judgment seeking a judgment for $124,798.96 against all Defendants pursuant to his ERISA claims, and a total of $131,321.21, including the state law contract claims, a small portion of which are not governed by ERISA.  Plaintiff also demands interest from April 2002 on these claims.  Plaintiff further indicates that in the event the Summary Judgment Motion is granted, the action would be concluded except for a motion for attorneys' fees pursuant to Plaintiff's rights under ERISA.

Defendants argue that Plaintiff is not entitled to summary judgment with respect to his claims under ERISA as both legal issues and genuine issues of material fact exist with respect to such claims. Neither, as a matter of law, can the Court render judgment with respect to Plaintiff's state law based actions relative to the severance and bonus claims until it makes a

---

[1] This action was actually preceded by a lawsuit filed on September 4, 2002, in the Franklin County Court of Common Pleas, Case No. 02CVH-09-9740, asserting claims against 13 defendants and asserting, among other things, (a) a request for a declaratory judgment that Plaintiff became an employee of the defendants or, in the alternative, determining which of the defendants Rodgers had been employed by: (b) a claim breach of contract, (c) a claim of unjust enrichment, (d) a claim for specific performance; (e) fraud; and (f) bad faith. On December 16, 2003, on the date the state court action was scheduled to go to trial and seven days after the state court entered a decision denying Plaintiff's motion for partial summary judgment, the state court action was dismissed without prejudice by the Plaintiff pursuant to Ohio Civil Rule 41(A).

determination as to the applicability of ERISA, since ERISA, if applicable, would preempt

Plaintiff's state law remedies. Even were the Court to reach the state law claims, issues of law

and/or genuine issues of material fact exist with respect to each of these claims, barring entry of

summary judgment. Neither is Plaintiff entitled to summary judgment against all of the

Defendants where he has failed to establish, as a matter of law, any basis for disregarding their

separate corporate identities or for imposing personal liability for corporate indebtedness on

Defendant Francis L. Price.  Finally, issues of law and genuine issues of fact bar summary

judgment with respect Plaintiff's ERISA based breach of fiduciary duty claims against

Defendant Francis L. Price.


## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which

provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate,

however, if the opposing party fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at

trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[2]  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby*, *Celotex*, and *Matsushita* have effected "a decided change in summary judgment practice" ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed

---

[2] *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.   DISCUSSION

Plaintiff Rodgers has two pending claims against Defendants:  an ERISA claim and a state law breach of contract claim, both alleging that Defendants Q3 breached the terms of Plaintiff's employment agreement resulting in denial of severance pay benefits, health insurance benefits, compensation under a Profit Bonus Pool and Executive Incentive Plan and failure to satisfy reimbursement obligations. Plaintiff seeks summary judgment on both claims. For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied.

### A.   The ERISA Claim

#### 1.   *Plaintiff's Severance Package*

Plaintiff Rodgers asserts that Defendants' denial of his severance package constitutes a violation of ERISA. Specifically, that his severance package falls within the definition of an

"employee welfare benefit plan" pursuant to 29 U.S.C. §1002(1)(A).  *See Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1409-1410 (6th Cir. 1996) (severance packages are welfare benefit plans under 29 U.S.C. §1002(1)).  The pertinent part of 29 U.S.C. §1002(1) provides that:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purposes of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment... or (B) any benefit described in section 186(c) of this title.
>
> "Plans to pay employees severance benefits, which are payable *only* upon termination of

employment, are employee welfare benefit plans within the meaning of the Act [ERISA]."

*Massachusetts v. Morash*, 490 U.S. 107, 116 (1989) (emphasis in original).

Defendants, however, argue that Plaintiff is not entitled to summary judgment with respect to the severance provisions of the Employment Letter as those provisions do not constitute an ERISA plan.  Further, Defendants argue that the existence of genuine and material questions of law and fact preclude the entry of summary judgment with respect to the severance provisions of the Employment Letter under Ohio law on breach of contract.

### a.    Severance Benefits under ERISA

The Court must first determine whether Plaintiff's severance package is a simple contract between Plaintiff and his employer, or an employment benefit under ERISA.  It is not enough for Plaintiff's severance package to fall "squarely within the definition of an employee welfare benefit plan pursuant to 29 U.S.C. §1002(1)." *Cecil v. AAN Mid-Atlantic, Inc.*, 118 F. Supp. 2d 659, 663 (D. Md. 2000).  While not enough according to precedent, this is what Plaintiff is

arguing in support of his Motion for Summary Judgment. Thus, the Court must look beyond the language of the statute to the precedents of the Supreme Court, the Sixth Circuit Court of Appeals, and to other persuasive authority from other courts to determine whether Plaintiff's severance package is an ERISA plan.

Primary guidance in this analysis is provided by *Fort Halifax Packaging Co. v. Coyne*, 482 U.S. 1 (1987). In *Fort Halifax*, the Supreme Court considered a Maine statute that required employers who terminate or relocate operations to pay a lump-sum payment to their employees. The Court held that the Maine statute did not establish, or require employers to maintain an ERISA plan:

> The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no periodic demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well never have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Id.* at 12.

The Court in *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992), looked to whether the employer's "undertaking or obligation requires managerial discretion in its administration." In *Kulinski v. Medtronic Bio-Medicus, Inc.*, 21 F.3d 254 (8th Cir. 1994), the Eighth Circuit articulated the following test:

The pivotal inquiry is whether the plan requires the establishment of a separate, ongoing administrative scheme to administer the plan's benefits. Simple or mechanical determinations do not necessarily require the establishment of such an administrative scheme; rather, an employer's need to create an administrative system may arise where the employer, to determine the employee's eligibility for and level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria.

In a decision following *Fort Halifax*, the Sixth Circuit held in *Sherrod v. General Motors Corp.*, 33 F.3d 636, 638 (6th Cir. 1994):

An employee benefit is regulated by ERISA only if it is administered through a "plan, fund, or program" established to provide benefits under any of the covered categories. In determining whether a "plan, fund, or program" exists, a court should focus on whether the employee benefit requires an administrative scheme to execute.

Thus, the Sixth Circuit precedent requires this Court to make a fact specific inquiry to determine whether Plaintiff's severance package constitutes a plan, *i.e.* involves an "ongoing administrative scheme." In severance package cases where the employee in question may be paid in a lump-sum upon termination, the Sixth Circuit has adopted the test developed in *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613 (6th Cir. 2002), under which the court examines "two particular factors to determine if a severance agreement plan meets the *Fort Halifax* criteria to determine if ERISA governs: 1) whether the employer has discretion over the distribution of benefits, and 2) whether there are on-going demands on an employer's assets." *Hughes v. White*, 467 F. Supp. 2d 791, 804 (S.D. Ohio 2006), *quoting Kolkowski*, 448 F.3d at 848.

Plaintiff relies on *Shahid v. Ford Motor Company*, 76 F.3d 1404 (6th Cir. 1996), in asserting that the severance package described in the Employment Letter satisfies the requirements of an ERISA plan. Defendants, however, argue that Plaintiff's reliance on *Shahid*

-11-

is misplaced. Defendants argue, and this Court agrees, that *Shahid* is factually distinguishable. The plan at issue in *Shahid* involved a formal severance plan, and the Sixth Circuit in that case assumed the existence of an ongoing administrative scheme, and therefore, was only faced with the issue of whether the plan fell within the definitional provisions of ERISA.

The Employment Letter in this case expressly sets forth the precise parameters of Plaintiff's severance package: "In the event that you are terminated by Q3 Stamped Metal, Inc. you will be entitled to six months base salary and six months medical benefits." No discretionary analysis is required. All that is required is a straightforward arithmetical computation, as acknowledged by Plaintiff in his Motion for Summary Judgment.

Plaintiff's severance benefits in this case are not discretionary, but rather set by the terms of his Employment Letter. A similar situation arose in *Delaye v. Agripac*, Inc. 39 F.3d 235 (9th Cir. 1994), and the Court held that an employment contract calling for continuation of pay and continuation of insurance and vacation benefits was not a plan because sending a single employee a check every month and continuing to pay his insurance benefits for a time specified in the contract does not rise to the level of an ongoing scheme. The *Delaye* Court explained:

> Delaye's contract does not implicate an ongoing administrative scheme. Once Agripac decided to terminate Delaye, the severance calculation became one akin to that in Fort Halifax – a straightforward computation of a one-time obligation. The obligation was either to pay Delaye his regular salary prorated to the date of his termination, if he was terminated for cause; or pay him a fixed monthly amount for twelve to twenty-four months according to a set formula, plus accrued vacation pay and insurance benefits, if he was terminated without cause. While payment could continue for as long as two years, there is nothing discretionary about the timing, amount or form of the payment. Sending Delaye, a single employee, a check every month plus continuing to pay his insurance premiums for
>
> the time specified in the employment contract does not rise to the level of an ongoing administrative scheme.

-12-

*Id.* at 237.

Plaintiff further expressed in his Reply brief that the terms of the severance package entitled him to health insurance benefits over a six-month period and that constitutes an ongoing administrative scheme to justify a claim under ERISA.  *See Stirton v. Michigan Tooling, Assoc.*, 2006 WL 2788120 *3 (E.D. Mich. 2006) ("the health benefits involved the defendant making continuing payments over time, not just writing a single check," and therefore the "health plan thus implicated an ongoing administrative scheme.").

Based on the aforementioned, there is a question of fact regarding whether Plaintiff's severance package constitutes an ongoing administrate scheme and falls under ERISA.  In addition, Defendants have more than established a question of fact as to whether the severance package in the Employment Letter is an ERISA plan or merely a simple contract between the employer and employee.  Therefore, Plaintiff cannot meet his burden to establish that he is entitled to summary judgment on his alleged ERISA claims.  As set forth above, the Court is concerned as to whether these claims should fall under ERISA.  Plaintiff's Motion for Summary Judgment is therefore denied.

**b.     Severance Benefits under Ohio law**

Defendants argue that summary judgment should be denied on Plaintiff's state law claims because it is unresolved as to whether Plaintiff's severance package is an ERISA-covered plan. If Plaintiff's severance package is ultimately classified as an ERISA-covered plan, then ERISA would preempt Plaintiff's state law remedies.  Further, Defendants argue that even if the Court were to consider Plaintiff's state law claims, the existence of unresolved legal issues and genuine issues of material fact would bar entry of summary judgment in Plaintiff's favor.

29 U.S.C. §1144(a) provides that ERISA "shall supercede any and all state laws insofar as they may now or hereafter relate to an employee benefit plan." The Supreme Court has interpreted this clause to preempt state law claims that would allow employee benefit plan beneficiaries to "obtain remedies under state law that Congress rejected in ERISA." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). The Sixth Circuit has also recognized the broad sweep of ERISA's preemption provision in relation to state law claims based upon an improper denial of benefits, noting that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).

Based upon the foregoing discussion, the Court finds that there is a question of fact as to whether Plaintiff's claim under his Employment Letter constitute a claim under ERISA.


## IV.    CONCLUSION

Based on the above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 38).

The Clerk shall remove Document 38 from the Court's pending motions list.

**IT IS SO ORDERED.**

  */s/ George C. Smith*                        
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**